DECISION AND JUDGMENT ENTRY
This case is before the court following the Wood County Court of Common Pleas' July 11, 2001 judgment entry granting appellees city of Northwood and Mark Stoner's (collectively referred to as "the city") motion for summary judgment and denying appellant Douglas Breno's request for declaratory relief. For the following reasons, we affirm the decision of the trial court.
The relevant facts of this case are as follows. In 1973, appellant, Douglas Breno, began his employment with the city as a patrol officer. Breno was promoted to sergeant in 1977 and served in that capacity until 1993.
In 1992, Breno filed a discrimination charge with the Ohio Civil Rights Commission ("OCRC") claiming that he was discriminated against on the basis of age. Breno contended that many of his job duties had been reassigned to younger officers with less experience. In January 1993, during the pendency of the charge, Breno was appointed to acting chief of police.
On June 14, 1993, Breno and the city entered into a "Settlement Agreement and Release" ("agreement") as to the OCRC charge. Also, as part of the agreement, Breno released the city from any state or federal discrimination claims.
Immediately preceding the execution of the agreement, it was submitted to city council, as emergency ordinance 93-30, for approval. The ordinance was passed by a unanimous vote.
On June 13, 1994, Breno was promoted to police chief for a one-year probationary period. Following this period, he served as police chief until February 2000, when he was terminated by Mayor Mark Stoner.
Stoner took office on January 1, 2000. On January 24, 2000, Stoner met with Breno and requested his resignation. Stoner informed him that he wished to take the city in a different direction and that Breno was not part of that direction. Stoner informed Breno that if he did not get a letter of resignation he would have to recommend his termination to city council. On February 10, 2000, after it was certain that Breno would not resign, council voted five to one to terminate Breno.
Breno commenced the instant action on July 27, 2000. In his complaint, Breno raised the following four counts: unlawful termination, in violation of R.C. 733.35; age discrimination, in violation of R.C.4112.02(A) and (N); breach of contract; and tortious interference with employment relationship.
On May 9, 2001, the city filed a motion for summary judgment. Relative to the issues now before us, the city argued that Breno, as an unclassified employee, could be terminated from his position without cause. The city further argued that the agreement related only to Breno's positions as acting chief or senior sergeant, not chief of police. Breno's opposition was limited to interpretation of the agreement and Breno's belief that the agreement plainly and unambiguously provided that he could only be discharged for cause.
In its reply, the city raised the argument that because the agreement conflicted with the Northwood City Charter it was void. The city further argued that by entering into the agreement, the city committed an ultra vires act. Breno, in a surreply, contended that the charter gave council the right to enter into contracts.
On July 11, 2001, the trial court granted the city's summary judgment motion on all counts in Breno's complaint. Relevant to this appeal, the trial court found that by entering into the agreement the city committed an ultra vires act. The court noted that according to the charter, the mayor had the power, with approval of council, to hire and fire Breno. The trial court further found that a sitting mayor cannot divest his successor of the authority to hire and fire unclassified employees as he so chooses. This appeal timely followed.
Breno now raises the following four assignments of error:
"1. The lower court erred in granting defendants' motion for summary judgment dismissing plaintiff's claim for breach of contract.
"2. The lower court erred in holding that public employees hold office as a matter of law and not of contract.
"3. The lower court erred in holding that the Settlement Agreement and Release entered into by and between the parties violated § 405(C) of the Charter of the City of Northwood.
"4. The lower court erred in holding that the Settlement Agreement and Release entered into by and between the parties violated § 9.01(1)(C) of the Northwood Charter."
At the outset we note that an appellate court reviews a trial court's ruling on a summary judgment motion de novo. Conley-Slowinski v. SuperiorSpinning Stamping Co. (1998), 128 Ohio App.3d 360, 363. To succeed on a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that:
"(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679.
A party claiming to be entitled to summary judgment on the grounds that a nonmovant cannot prove his or her case bears the initial burden of specifically identifying the basis of its motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact as to an essential element of the nonmovant's case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant satisfies this burden by presenting competent summary judgment evidence, of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant satisfies this initial burden, the burden shifts to the nonmovant to produce specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue exists for trial. Id. Accord Vahila v.Hall (1997), 77 Ohio St.3d 421, 429-430; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 114-115.
Breno's assignments of error are interrelated and, for purposes of organization, will be discussed as follows: (1) whether a public employee can hold his position as a matter of contract and (2) whether the agreement conflicts with the charter.
Breno, in his second assignment of error, disputes the trial court's statement in its July 11, 2001 judgment that a public officer holds his position as a matter of law, not contract. Breno contends that public employees have long been afforded the right to enter into personal employment contracts. The city and this court do not disagree with Breno's argument; however, the issue germane to this appeal is whether the agreement between the city and Breno is enforceable.
Thus, assuming the trial court's statement was in error, the error is harmless in relation to whether material issues of fact existed which should have precluded a summary judgment award. Appellant's second assignment of error is not well-taken.
In Breno's first, third and fourth assignments of error, he contends that the trial court erred in finding that the agreement violated certain provisions of the city's charter. Preliminarily, we note that the city of Northwood became a chartered municipality in 1982. Article II of the charter provides:
"The Municipality shall have all powers of local self-government now and hereafter granted to municipalities by the Constitution of the State of Ohio and such further powers as are now or hereafter may be granted by the laws of the State of Ohio. All such powers shall be exercised in the manner prescribed in this Charter or, if not prescribed herein, in such lawful manner as the Council shall determine by ordinance or resolution. Enumeration of or reference to particular powers in this Charter shall not be construed to be exclusive."
The disputed provisions of the agreement provide:
"3. Northwood shall continue to employ Breno, at his current position, or his former position as Senior Sergeant, or in another position mutually agreeable to the parties herein, so long as he continues to faithfully perform his duties and does not create just cause for termination; it is additionally agreed that Northwood shall not retaliate against Breno for the filing and prosecution of the aforementioned charges before the Ohio Civil Rights Commission.
"4. Northwood agrees that in the event Breno ceases to hold his current position as Acting Chief, and is not promoted to a mutually agreeable position, Breno shall be restored to his former position of Senior Sergeant, which position includes the salary of a Sergeant plus any increases or raises based upon Breno's seniority and experience, * * *."
As to the intent and purpose of the above-quoted sections, Breno, in his June 4, 2001 affidavit stated:
"5. In paragraph three (3) of the Settlement Agreement and Release, the City of Northwood promised to continue to employ me in my current position, in the position of Senior Sergeant, or in another mutually agreeable position, as long as I continued to perform my job duties faithfully and did not create just cause for my termination.
"6. * * *
"7. In paragraph four (4) of the Settlement Agreement and Release, the City of Northwood agreed that if I ceased holding the position of Acting Chief and was not promoted to a mutually agreeable position, then I would be restored to the position of Senior Sergeant. I believed by signing this Agreement, in relation to paragraph four (4), that if someone else filled the position of Chief of Police of the City of Northwood, then I would be given my former position as Senior Sergeant or another mutually agreeable position."
Similarly, John P. Donnegan, the mayor at the time the agreement was signed, testified in his May 3, 2001 affidavit as follows:
"4. The intent of the agreement was to assure Mr. Breno that if he did not continue in the position of acting Chief of Police and was not promoted, he could assume his former position of Senior Sergeant, or another mutually agreeable position, and that he could continue in that position for as long as he continued to perform in an acceptable manner.
"5. The Settlement Agreement was not intended to guarantee lifetime employment to Mr. Breno and I would not have signed an agreement that provided such a guarantee."
Reviewing the agreement as a whole and paying particular attention to Sections 3 and 4, we find that the agreement simply provides that Breno, if he was not promoted to police chief, would be restored to his position as senior sergeant or another mutually agreeable position and would not be terminated without cause. The agreement did not afford Breno continued employment upon his promotion to police chief, an unclassified position. For this reason, we need not address the merits of appellant's first, third and fourth assignments of error and, summarily, find them not well-taken.
On consideration whereof, we find that substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.